Paul S. White (SBN 146989)
   Email: Paul.White@wilsonelser.com
Shannon L. Santos (SBN 260112)
   Email: Shannon.Santos@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**
555 South Flower Street, Suite 2900
Los Angeles, CA 90071-2407
Telephone: (213) 443-5100
Facsimile: (213) 443-5101

*Attorneys for Plaintiff Ironshore Specialty Insurance Company*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRONSHORE SPECIALTY INSURANCE COMPANY,<br><br>            Plaintiff,<br><br>vs.<br><br>MATTERPORT, INC., RJ PITTMAN, DAVID GAUSEBECK, MATT BELL, PETER HEBERT, JASON KRIKORIAN, CARLOS KOKRON, and MICHAEL GUSTAFSON,<br><br>            Defendants. | Case No. 5:23-cv-01457<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Ironshore Specialty Insurance Company ("Ironshore") hereby makes its Complaint for Declaratory Relief against Defendants Matterport, Inc. ("Matterport"), RJ Pittman, David Gausebeck, Matt Bell, Peter Hebert, Jason Krikorian, Carlos Kokron, and Michael Gustafson (collectively with Matterport, the "INSUREDS") and alleges as follows:

## I. INTRODUCTION

1. This Complaint involves an insurance coverage dispute. Ironshore issued a "claims-made" Management and Company Liability Insurance Policy (the "Policy") to Matterport, which provided coverage for the INSUREDS.

2. In June 2021, William Brown ("Brown"), the former CEO of Matterport and owner of 1,387,000 shares of its stock, filed a lawsuit against the INSUREDS (and another

defendant) alleging the INSUREDS improperly imposed a 180-day "lock-up" period of his shares in the action entitled *Brown v. Matterport, Inc., et al.*, Chancery Court of Delaware, Case No. 2021-0595-LWW (the "Underlying Lawsuit"). A true and correct copy of the operative pleading to the Underlying Lawsuit is attached as **Exhibit 1** hereto and incorporated herein by reference. The INSUREDS now seek coverage under the Ironshore Policy for the Underlying Lawsuit.

3. Importantly, both (i) at the time the Ironshore Policy incepted (May 31, 2020); *and* (ii) at the time Brown brought the Underlying Lawsuit (June 13, 2021), Brown owned 1,387,000 shares of Matterport's stock or *3.0176% of all of Matterport's total outstanding shares*. Indeed, in seeking coverage from Ironshore, Matterport expressly submitted documentation to Ironshore representing that Brown had "ownership" of 1,387,000 Matterport's shares or "3.0176%" of Matterport's total stock.

4. This Complaint involves the interpretation of Ironshore's 2.5% Major Shareholder Exclusion, which expressly bars coverage for "any **Claim**" (*i.e.*, the Underlying Lawsuit) "which is *brought*": [1] "by any individual…that owns or controls…2.5% or more of the outstanding voting stock of the **Company** [*i.e.*, Brown]" ("Clause 1"); "*or*" *separately*, [2] "by any security holder of the **Company** [*i.e.*, Brown]…*unless* such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of any Major Shareholder [*i.e.*, Brown]" (Clause 2).

5. Because Brown owned 3.0176% of Matterport's total stock when (i) the Ironshore Policy incepted; and (ii) when the Underlying Lawsuit was filed by Brown, Clause 1 is implicated and bars coverage for the Underlying Lawsuit, and, separately, Clause 2 is also implicated and further bars coverage for the Underlying Lawsuit.

6. Ironshore seeks a judicial declaration that, after consideration of Ironshore's 2.5% Major Shareholder Exclusion, Ironshore does not have a duty under its Policy to pay Defense Expenses or to provide indemnification for any settlement or judgment arising from the Underlying Lawsuit.

7. An actual controversy exists between the INSUREDS and Ironshore regarding Ironshore's purported obligation to provide the INSUREDS with insurance coverage for the

Underlying Lawsuit. This controversy cannot be resolved without a declaration of the rights and responsibilities of the parties by this Court.

## II. PARTIES

8. Plaintiff Ironshore is an insurance company organized under the laws of the State of Illinois with its principal place of business in Boston, Massachusetts.

9. On information and belief, Defendant Matterport has its principal place of business at 352 East Java Drive in Sunnyvale, California, and is incorporated in Delaware.

10. On information and belief, Defendant RJ Pittman, Chairman and Chief Executive Officer of Matterport, is an individual who resides in and is a citizen of California.

11. On information and belief, David Gausebeck, co-founder and Chief Scientist Officer of Matterport, is an individual who resides in and is a citizen of California.

12. On information and belief, Matt Bell, co-founder and prior director on the board of Matterport, is an individual who resides in and is a citizen of California.

13. On information and belief, Peter Hebert, a director on the board of Matterport, is an individual who resides in and is a citizen of California.

14. On information and belief, Jason Krikorian, a director on the board of Matterport, is an individual who resides in and is a citizen of California.

15. On information and belief, Carlos Kokron, a prior director on the board of Matterport, is an individual who resides in and is a citizen of California.

16. On information and belief, Michael Gustafson, a director on the board of Matterport, is an individual who resides in and is a citizen of California.

## III. JURISDICTION AND VENUE

17. This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rules of Civil Procedure Rule 57, for the purpose of determining a question of actual controversy between Ironshore and the INSUREDS.

18. Jurisdiction of this action is based on 28 U.S.C. § 1332(a)(2) as there is diversity of citizenship between Ironshore and the INSUREDS in that Ironshore is a citizen of the Illinois and Massachusetts and the INSUREDS are (on information and belief) all citizens of California

or Delaware. The amount in controversy exceeds $75,000, exclusive of interest and costs, as counsel for the INSUREDS has advised Ironshore that the INSUREDS have incurred over $4.9 million in legal fees, costs, and expenses related to the defense of the Underlying Lawsuit, and the INSUREDS are presently seeking Ironshore's $3 million Limit.

19. Venue for this action in the Northern District of California is proper pursuant to 28 U.S.C. § 1391(c)(1) and (2), as one or more of the individual defendants, on information and belief, reside in this judicial district, and/or Matterport resides in this judicial district.

## IV.  BACKGROUND

### A.  Matterport Seeks Insurance Coverage from Ironshore

20. On April 6, 2020, Matterport (through its broker) contacted Ironshore and provided an insurance submission to Ironshore seeking a quote for insurance coverage (the "April 2020 Matterport Submission"). In the April 2020 Matterport Submission, Matterport provided to Ironshore various documents, including "the [Argonaut] renewal app, financials, *cap table* and list of directors/officers…[and] the expiring policy." (Emphasis added.)

21. As to the "cap table," Matterport provided Ironshore with two spreadsheets contained in the same document, which are entitled: (1) "**Matterport, Inc.…*Ownership* Summary**" ("Spreadsheet 1") (underlying added); and (2) "**Matterport. Inc. – Cap Table – Stakeholder Details**" ("Spreadsheet 2"). (Ex. 2, Ownership Spreadsheets, EXH. 2-1, 2.)

22. A true and correct copy of Spreadsheet 1 and Spreadsheet 2 are attached as **Exhibit 2** hereto and incorporated herein by reference.

23. Through the April 2020 Matterport Submission, Matterport represented to Ironshore that Brown (Matterport's former CEO) had "ownership" of 3.0176% of Matterport's stock. Specifically, Spreadsheet 1 states the "Ownership Summary," and the final right-hand column is entitled: "Percent Ownership", and includes:

    (i)    "Common Stock":    16.9638%;

    (ii)    "Preferred Stock":    52.8001%;

    (iii)    "Warrants":    0.4623%; and

/ / /

(iv) "2011 Stock Incentive Plan" "Awards Outstanding + Shares Remaining for Issuance": 29.7739%.

(Ex. 2, Ownership Spreadsheets, EXH. 2-1.)

24. When all of these shares are all added up on Spreadsheet 1, the "Percent Ownership" totals 100.00001% with respect to "**45,964,241**" "Common Stock Equivalent Shares." (*Id*.)  In this respect, the "*Ownership* Summary" set forth in Spreadsheet 1 provided by Matterport to Ironshore expressly includes "Awards Outstanding," including shares "Granted" from the "2011 Stock Incentive Plan" (*id*.), *which would include Brown's 1,350,000 shares* (as reflected on Spreadsheet 2), as well as his previously purchased 37,000 shares.  Accordingly, based on the "*Ownership* Summary," Matterport *represented* to Ironshore that *Matterport considered "granted" shares of the 2011 Stock Incentive Plan as part of Matterport's stock "Ownership*."  Spreadsheets 1 and 2 expressly reflect the "Ownership" of 45,964,241 shares of all of Matterport's common and preferred stock and reflect that Brown had "Ownership" of 1,387,000 shares of Matterport's 45,964,241 total shares or *"3.0176" of all of Matterport's stock.*

(Ex. 2, Ownership Spreadsheets, EXH. 2-1, 2.)

### B. The Ironshore Policy

#### 1. The Ironshore Proposed Policy

25. Following the April 2020 Matterport Submission, on May 4, 2020, Ironshore provided Matterport through its broker with an "Insurance Indication" for a proposed "Policy Period" from "May 31, 2020 To: May 31, 2021" with a $3 million Limit of Liability for a premium of "$71,928" and stated:

**The Following Endorsements will be added to the basic Policy:**

* * *

13. Major Shareholder Exclusion @ 2.5%

(Ex. 3, Insurance Indication, EXH. 3-1, 2 (emphasis in original).)

26. A true and correct copy of the May 4, 2020 "Insurance Indication" is attached as **Exhibit 3** hereto and incorporated herein by reference.

///

27. Consequently, on May 4, 2020 – *three weeks prior to the issuance of the Ironshore Policy* – Matterport knew: (1) if Matterport accepted the Ironshore Policy, that the Ironshore Policy excluded coverage for any Claim by a 2.5% Shareholder; and (2) that the April 2020 Matterport Submission included Spreadsheets 1 and 2 (*i.e.*, Matterport's "Ownership Summary"), whereby Matterport listed 432 Matterport shareholders, of which only nine owned 2.5% of more of Matterport's stock, or 2% of all of Matterport's shareholders, *including Brown*. Accordingly, when Matterport accepted the Ironshore Policy (below), *Matterport knew that any lawsuit brought by Brown (or any of the eight other 2.5% or greater Matterport shareholders) would* **not** *be covered under the Policy*.

### 2. The Ironshore Policy

28. Matterport accepted Ironshore's "Insurance Indication," and Ironshore issued the actual Policy to Matterport for a premium of $71,928. The Policy includes a **Policy Period** from May 31, 2020 to May 31, 2021, a $3 million Limit of Liability, and Endorsement No. 13, which provides:

**MAJOR SHAREHOLDER EXCLUSION**

In consideration of the premium charged it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured** which is brought by any individual or entity (that owns or controls (whether beneficially, directly or indirectly) 2.5% or more of the outstanding voting stock of the **Company** (hereinafter "Major Shareholder"); or by any security holder of the **Company** whether directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of any Major Shareholder.

(Ex. 4, Policy, EXH. 4-1, 2, 48 (emphasis in original).)

29. A true and correct copy of the Ironshore Policy is attached as **Exhibit 4** hereto and incorporated herein by reference.

/ / /

### C. **Brown Owned 2.77% of Matterport's Stock When the Policy Incepted**

30. In addition to Matterport's express representations to Ironshore through the April 2020 Matterport Submission, by May 31, 2020 (when the Ironshore Policy incepted), Brown "owns" or "controls" "beneficially" 1,274,421 shares of "vested" stock or 2.77% of Matterport's total stock.

31. On March 5, 2015, Brown purchased 37,000 shares of Matterport's common stock pursuant to a Restricted Stock Purchase Agreement.

32. A true and correct copy of the March 5, 2015 Restricted Stock Purchase Agreement is attached as **Exhibit 5** hereto and incorporated herein by reference.

33. In addition, on January 21, 2014, Brown was provided with Stock Option Grants to purchase 695,000 shares of Matterport's common stock (the "2014 Options"). Based on the terms of the 2014 Options, Brown owned or controlled 695,000 "vested" shares of Matterport stock on May 23, 2018.

34. A true and correct copy of the 2014 Options are attached as **Exhibit 6** hereto and incorporated herein by reference.

35. Further, on March 29, 2016, Brown was provided with Stock Option Grants to purchase 655,000 shares of Matterport's common stock (the "2016 Options"). Based on the terms of the 2016 Options, 25% of "vested" stock is owned or controlled beneficially by Brown on April 1, 2017 (*i.e.*, 163,750 shares), and, each month thereafter, Brown owned or controlled beneficially an additional 10,234.375 "vested" shares of Matterport's stock. As of May 31, 2020 (37 months later), Brown owned or controlled beneficially an additional 378,671 "vested" shares of Matterport's stock or 542,421 Matterport "vested" shares under the 2016 Options.

36. A true and correct copy of the 2016 Options are attached as **Exhibit 7** hereto and incorporated herein by reference.

37. Accordingly, as of May 31, 2020 (when Ironshore's Policy incepted), Brown owned or controlled beneficially at least 1,274,421 "vested" shares of Matterport's stock. As of May 31, 2020, Matterport had 45,964,241 shares of its stock issued – *so Brown owned or controlled beneficially at least 2.77% of Matterport's stock*. Further, as set forth above, as of

May 31, 2020, Matterport *represented* to Ironshore that Brown owned 1,387,000 shares of Matterport stock or *3.0176% of Matterport's total shares*.

### D. The Underlying Lawsuit

38. On June 13, 2021, Brown filed the Underlying Lawsuit against the INSUREDS, and, on September 19, 2022, Brown filed his Verified Third Amended Complaint ("TAC"), which is presently the operative pleading in the Underlying Lawsuit.

39. A true and correct copy of the TAC is attached as **Exhibit 1** hereto and incorporated herein by reference.

40. The Underlying Lawsuit alleges Brown sought to sell his 1,387,000 shares of Matterport stock following a "de-SPAC" transaction whereby Matterport became a publicly traded company; however, Matterport stated Brown's shares were subject to a 180-day "lock-up" period. Brown then filed the Underlying Lawsuit seeking damages because he was unable to sell his shares during that 180-day period. (Ex. 1, TAC, ¶¶ 1-4, EXH. 1-1-3.)

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Declaratory Relief: No Duty to Pay "Defense Expenses" Against All Defendants)**

41. Ironshore hereby incorporates and re-alleges the allegations in each of the foregoing paragraphs as if fully set forth herein.

42. There exists a genuine and bona fide dispute and an actual controversy and disagreement between Ironshore and the INSUREDS regarding whether Ironshore has a duty to pay any **Defense Costs** in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

43. The INSUREDS contend that Ironshore has a duty to pay 100% of the **Defense Costs** incurred in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

44. Ironshore contends it has no duty to pay for any of the **Defense Costs** in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

45. In accordance with the terms, conditions, exclusions, and endorsements of the Policy, Ironshore has no duty to pay for any of the **Defense Costs** in connection with the

Underlying Lawsuit under the Policy, in whole or in part, for the following reasons:

    a.    there is no coverage for any **Defense Costs** incurred by the INSUREDS, because Clause 1 of the Major Shareholder Exclusion applies to "any **Claim**…which is brought by…any individual…that owns or controls…beneficially…2.5% or more of the outstanding voting stock of the **Company**," and Brown owns or controls beneficially 3.0176 or 2.77% of Matterport's stock; or

    b.    there is no coverage for any **Defense Costs** incurred by the INSUREDS, because Clause 2 of the Major Shareholder Exclusion applies to "any **Claim**…which is brought…by any security holder of the **Company**," and Brown is a security holder of Matterport, and the Policy's exception does not apply;

46. Ironshore also relies upon all additional terms, conditions, exclusions, and endorsements in the Policy not specifically identified herein that potentially limit or preclude coverage for the duty to pay for any of the **Defense Costs** in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

47. Ironshore seeks a declaration from this Court that Ironshore has no duty to pay for any of the **Defense Costs** in connection with the Underlying Lawsuit pursuant to the terms of the Policy.

## SECOND CAUSE OF ACTION

**(Declaratory Relief: No Duty to Indemnify Against All Defendants)**

48. Ironshore hereby incorporates and re-alleges the allegations in each of the foregoing paragraphs as if fully set forth herein.

49. There exists a genuine and bona fide dispute and an actual controversy and disagreement between Ironshore and the INSUREDS regarding whether Ironshore has a duty to indemnify the INSUREDS in connection with any "**Loss**" (including settlement or judgments) incurred for the Underlying Lawsuit.

/ / /

50. Upon information and belief, the INSUREDS contends that Ironshore has a duty to indemnify them in the Underlying Lawsuit pursuant to the terms of the Policy.

51. Ironshore contends it has no duty to indemnify the INSUREDS named as defendants in the Underlying Lawsuit pursuant to the terms of the Policy.

52. In accordance with the terms, conditions, exclusions, and endorsements of the Policy, Ironshore has no duty to indemnify the INSUREDS in the Underlying Lawsuit under the Policy, in whole or in part, for the following reasons:

    a. there is no coverage for any **Defense Costs** incurred by the INSUREDS, because Clause 1 of the Major Shareholder Exclusion applies to "any **Claim**…which is brought by…any individual…that owns or controls…beneficially…2.5% or more of the outstanding voting stock of the **Company**," and Brown owns or controls beneficially 3.0176 or 2.77% of Matterport's stock; or

    b. there is no coverage for any **Defense Costs** incurred by the INSUREDS, because Clause 2 of the Major Shareholder Exclusion applies to "any **Claim**…which is brought…by any security holder of the **Company**," and Brown is a security holder of Matterport, and the Policy's exception does not apply;

53. Ironshore also relies upon all terms, conditions, exclusions, and endorsements in the Policy not specifically identified herein that potentially limit or preclude coverage for the duty to indemnify the INSUREDS under the Policy for the Underlying Lawsuit.

54. Ironshore seeks a declaration from this Court that Ironshore has no duty to indemnify the INSUREDS in the Underlying Lawsuit pursuant to the Policy.

## PRAYER FOR RELIEF

WHEREFORE, Ironshore prays for judgment against the INSUREDS as follows:

1. That the Court determine, decree, and adjudge that Ironshore has no duty to pay for any of the **Defense Costs** incurred in connection with the Underlying Lawsuit pursuant to the terms of the Policy;

|   |   |   |
|---|---|---|
| 1 | 2. | That the Court determine, decree, and adjudge that Ironshore has no duty to indemnify the INSUREDS for any **Loss** (including settlements and judgments) incurred in connection with the Underlying Lawsuit pursuant to the Policy; |
| 4 | 3. | For attorneys' fees and costs; |
| 5 | 4. | For costs of suit incurred herein; and |
| 6 | 5. | For such other and further relief as the Court deems fit and proper under the circumstances and evidence. |

Dated: March 28, 2023                    WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

By: */s/ Shannon L. Santos*
　　Paul S. White
　　Shannon L. Santos
　　*Attorneys for Plaintiff Ironshore Insurance Company*